## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

DUSTIN A. KELTIE,

     Plaintiff,

v.

TAYLOR & HALL TRANSPORT, LLC; FREIGHT LOGISTICS & TRANSPORTATION, INC.; and JOHN S. BRIDGES, individually.

     Defendants

---

## COMPLAINT AND JURY DEMAND

---

     Plaintiff Dustin A. Keltie, by and through his attorneys, Bradley A. Levin and Jeremy A. Sitcoff of LEVIN ROSENBERG PC, and Molly Greenblatt Welch and Bruce A. Braley of LEVENTHAL & PUGA, P.C., for his Complaint and Jury Demand against Defendants Taylor & Hall Transport, LLC, Freight Logistics & Transportation, Inc., and John S. Bridges, allege and state as follows:

### PARTIES AND JURISDICTION

     1.    Plaintiff Dustin A. Keltie is, and at all times relevant to this action was, a resident of the State of Colorado.

     2.    Defendant Taylor & Hall Transport, LLC ("Taylor & Hall") is a limited liability company created and existing under the laws of the state of Missouri, with its principal place of business in Charleston, Missouri.

     3.    Defendant Freight Logistics & Transportation, Inc. ("Freight Logistics") is a corporation created and existing under the laws of the state of Missouri, with its principal place of business in Charleston, Missouri.

4.      Defendant John S. Bridges ("Bridges") is, and at all times relevant to this action was, a resident of the State of Illinois.

5.      The U.S. District Court for the District of Colorado has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

6.      The tortious conduct that gave rise to these claims occurred in the State of Colorado.

7.      Venue is proper in this Court under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

8.      Defendant Bridges had an Illinois Commercial Driver's License (#B632-4774-8371) to drive commercial motor vehicles.

9.      Jonathan W. Hall is the Registered Agent for Defendant Taylor & Hall.

10.     On information and belief, Jonathan W. Hall and Tammy D. Taylor are the principal owners of Defendant Taylor & Hall.

11.     Defendant Taylor & Hall is a licensed motor carrier authorized at all material times to transport property in interstate commerce under U.S. DOT # 2417718.

12.     Since its founding, Defendant Taylor & Hall "has grown to over 110 Power units, 160 trailers and 245 employees." Its headquarters in Charleston, Missouri includes offices and a shop that occupy twelve acres. Defendant Taylor & Hall has a 40,000 square foot satellite terminal in Laredo, Texas adjacent to the new bridge crossing point to Mexico.  It also has terminals in Fort Smith, Arkansas and El Paso, Texas on over ten acres and with 50,000 square feet of warehouse space.

13.     Jonathan W. Hall is the Registered Agent for Defendant Freight Logistics.

14.     Jonathan W. Hall and Tammy D. Taylor are officers of Defendant Freight Logistics.

15.     On information and belief, Jonathan W. Hall and Tammy D. Taylor are the principal shareholders of Defendant Freight Logistics.

16.     Since its founding, Defendant Freight Logistics "has grown to over 155 Power units, 575 trailers and 245 employees." Its headquarters in Charleston, Missouri includes offices and a shop that occupy twelve acres. Defendant Freight Logistics has a 40,000 square foot satellite terminal in Laredo, Texas adjacent to the new bridge crossing point to Mexico.  It also has terminals in Fort Smith, Arkansas and El Paso, Texas on over ten acres and with 50,000 square feet of warehouse space.

17.     On November 25, 2013, Defendant Freight Logistics had its common carrier and contract authority involuntarily revoked by the U.S. Department of Transportation.

18.     Defendant Taylor & Hall is a wholly-owned subsidiary of Defendant Freight Logistics.

19.     Defendants Taylor & Hall and Freight Logistics share the same Registered Agent, the same address, the same Post Office Box, and the same ownership team.

20.     Defendants Taylor & Hall and Freight Logistics hold themselves out to the public as sharing common headquarters and common satellite terminals in Laredo, Texas and Fort Smith, Arkansas.

21.     On August 4, 2014, Defendants Taylor & Hall and/or Freight Logistics employed Defendant Bridges to haul commercial goods in interstate commerce using a 2007 Freightliner truck tractor and a 2008 Utility semi-trailer owned and/or operated by Defendant Taylor & Hall or Defendant Freight Logistics.

22.     On August 4, 2014, Defendant Bridges drove the tractor-trailer owned and/or operated by Taylor & Hall and/or Freight Logistics to Fort Morgan Pet Food Company located at 13553 County Road 19 in Fort Morgan, Colorado to pick up a load of frozen pet food.

23.     On August 4, 2014, Defendant Bridges was acting within the course and scope of his employment with Defendants Taylor & Hall and/or Freight Logistics during the trip to Fort Morgan, Colorado.

24.     Defendant Bridges was operating their tractor and trailer with their knowledge and consent on August 4, 2014.

3

25.     After picking up the load of frozen pet food, Bridges pulled up to the intersection of the driveway leaving Fort Morgan Pet Food Company and the west edge of County Road 19. It was approximately 4:30 p.m. in the afternoon.

26.     On August 4, 2014, at approximately 4:30 p.m., the blacktop surface of County Road 19 was straight and level.

27.     On August 4 2014, at approximately 4:30 p.m., County Road 19 was dry.

28.     On August 4, 2014, at approximately 4:30 p.m., the sky was clear on County Road 19.

29.     On August 4, 2014, at approximately 4:30 p.m., Defendant Bridges pulled up to the intersection knowing that he was driving a fully-loaded tractor-trailer combination with a gross vehicle weight of approximately 80,000 pounds and a combined length of over 70 feet.

30.     As an experienced professional truck driver with many years of experience under his belt, Defendant Bridges pulled up to the intersection knowing that he was required to yield to oncoming traffic on County Road 19 before attempting to pull his fully-loaded tractor-trailer onto the roadway heading toward Fort Morgan.

31.     As an experienced professional truck driver, Defendant Bridges pulled up to the intersection knowing that he was required to maintain a proper lookout for oncoming traffic that could require him to yield before attempting to pull his fully-loaded tractor-trailer onto the roadway.

32.     As an experienced professional truck driver, Defendant Bridges knew or should have known that it would take a significant amount of time for his fully-loaded tractor-trailer to accelerate from a stopped position in the driveway leaving Fort Morgan Pet Food Company, cross two lanes of County Road 19, and fully complete a left-turning maneuver before the southbound lane was completely clear for southbound traffic.

33.     As an experienced professional truck driver who had driven on County Road 19 before reaching his destination at Fort Morgan Pet Food Company, Defendant Bridges knew or

should have known that the posted speed limit for southbound traffic on County Road 19 was 55 miles per hour.

34.     As an experienced professional truck driver, Defendant Bridges knew or should have known that a vehicle traveling southbound on County Road 19 would be traveling approximately 80 feet per second.

35.     As Defendant Bridges pulled up to the intersection on August 4, 2014, at approximately 4:30 p.m., he looked to his left and saw a straight truck owned by Roggen Farmers Elevator and being driven by Plaintiff Dustin Keltie approaching from the north on County Road 19.

36.     When Defendant Bridges first saw the truck being driven by Plaintiff Dustin Keltie, it was approximately 200 feet away from Defendant Bridges' tractor-trailer combination.

37.     Armed with all this information that he knew or should have known, Defendant Bridges made the conscious, deliberate, and reckless decision to pull his fully-loaded vehicle onto the west edge of County Road 19 and begin a left-turning maneuver that blocked both lanes of County Road 19 as Plaintiff Dustin Keltie's truck headed toward him at highway speed.

38.     Defendant Bridges' negligent and reckless decision to enter County Road 19 created an unavoidable hazard that gave Plaintiff Dustin Keltie no avenue of escape.

39.     Plaintiff Dustin Keltie's truck slammed into the fully-loaded trailer of frozen pet food and the force of the collision was so powerful that the cab of Plaintiff Dustin Keltie's truck completely penetrated the semi-trailer loaded with frozen pet food and began to emerge on the opposite side before coming to rest.

40.     The weight of Defendant Bridges' fully-loaded tractor trailer was so great that he had only accelerated to a maximum speed of approximately 12 feet per second by the time the two vehicles collided.

41.     The force of impact of the collision was so great that Plaintiff Dustin Keltie was trapped in the cab of his truck for over four and one-half hours while emergency responders from throughout the area struggled to separate the two vehicles.

42.     A helicopter crew of emergency medical providers from North Colorado Medical Evacuation waited to rush Plaintiff Dustin Keltie for much-needed medical care.

43.     During his four and one-half hour ordeal trapped inside the crushed cab of the Roggen truck, emergency responders had to climb into the wreckage of the damaged trailer in order to speak with Plaintiff Dustin Keltie through a small hole.

44.     During this time, Plaintiff Dustin Keltie complained of pain "everywhere" and indicated he could not feel his legs.

45.     During his four and one-half hour ordeal trapped inside the crushed cab of the Roggen truck, hot fluid from the radiator of the Roggen truck spilled over Plaintiff Dustin Keltie's body causing a 10% total body surface area second degree burn on his right upper extremity and right lower extremity.

46.     During his four and one-half hour ordeal trapped inside the crushed cab of the Roggen truck, multiple attempts were made to free Plaintiff Dustin Keltie without success.

47.     At 5:12 p.m., Colorado State Patrol Corporal Ken Nelson was asked to request a large wrecker to be sent to the collision scene to help remove the straight truck from the trailer so rescue workers could extricate Plaintiff Dustin Keltie from the crushed cab of the straight truck.

48.     While Plaintiff Dustin Keltie was trapped inside the Roggen truck, Defendant Bridges was causing problems for the rescue workers. When Trooper Kinder with the Colorado State Patrol Motor Carrier Safety Unit arrived on the scene, a firefighter helping with the extrication approached Trooper Kinder and Corporal Nelson and asked them to get Bridges out of the cab of his tractor while they were trying to get Plaintiff Dustin Keltie out of the Roggen truck.

49.     Corporal Nelson approached Defendant Bridges and asked him to leave his vehicle.

50.     Corporal Nelson also advised Defendant Bridges not to remove anything from the vehicle that was critical to the investigation.

51.     Trooper Kinder went back to the crash scene.  He next became aware that the firefighters were telling Defendant Bridges to move back because he was getting too close to where they were working.  Trooper Kinder had to tell Defendant Bridges to move back behind the fire

6

trucks. Trooper Kinder also advised Defendant Bridges not to get into the cab of his truck or around his trailer while the extraction and investigation were being completed. Trooper Kinder specifically informed Defendant Bridges that if he needed anything out of his tractor, he needed to let a State Trooper know and they would get it for him depending on his needs.

52.     When Trooper Aydt of the Colorado State Patrol arrived on the scene, he spoke to Defendant Bridges and told him to "collect all his personal information and vehicle information" and he "would get it from him in a bit." Later, after Trooper Fetzer arrived on the scene, Trooper Aydt asked him to get a statement from Defendant Bridges and gather his information for a truck contact report.

53.     Later, after the investigating the cause of the collision, Trooper Aydt located Defendant Bridges and told him "that after investigating the scene he was going to be at fault for the crash since he had pulled out in front of the other driver. *** I told him that he should not have pulled out of the driveway after he had seen the other truck on the roadway."

54.     Trooper Aydt issued a Summons and Complaint to Defendant Bridges for Careless Driving Causing Bodily Injury, in violation of Colorado Revised Statute § 42-4-1402.

55.     At approximately 8:00 p.m., the straight truck and the semi-trailer were finally pulled partially free from each other to allow better access to Plaintiff Dustin Keltie.

56.     At approximately 8:15 p.m., word was passed to the helicopter medical evacuation crew that Plaintiff Dustin Keltie was "becoming less interactive and not following commands."

57.     At this point the helicopter medical evacuation crew actually climbed onto the truck to initiate care of Plaintiff Dustin Keltie during the final steps of extrication.

58.     When they first made contact with Plaintiff Dustin Keltie, he was mumbling on initial assessment, was pale and cool, was only oriented to his name, was generally unable to answer questions or follow commands, and was waving his badly-fractured left arm in a "non-purposeful manner." He was unable to track his healthcare providers with his eyes. He had dried blood around his face and head.

59.     Once extricated, Plaintiff Dustin Keltie was placed on a long spine board and in a cervical collar and an IV was placed.

60.     Plaintiff Dustin Keltie sustained multiple severe fractures to his arms and legs during the collision and those fractures were "rapidly reduced to normal anatomical positions and supported with bulky dressings and immobilized to the long spine board."

61.     In addition to his severe fracture injuries, Plaintiff Dustin Keltie suffered significant internal injuries and burn injuries during the collision and its aftermath.  He had burns over 6% of his total body surface area, including his right shoulder, right bicep, right forearm, and right hand. Plaintiff Dustin Keltie also had a significant laceration to his left inguinal region and an avulsion of his scrotum.

62.     It was completely dark by the time Plaintiff Dustin Keltie was finally extricated from the smashed cab of the Roggen grain truck and transferred to the helicopter for emergency transport to North Colorado Medical Center ("North Colorado") in Greeley, Colorado.

63.     At 8:51 p.m., a Glasgow coma assessment was done and Plaintiff Dustin Keltie was given a score of 11.

64.     At 9:02 p.m., the Med Evac crew assessed Plaintiff Dustin Keltie and decided to intubate him "due to decreasing mentation and breathing that appears fatigued."

65.     At 9:09 p.m., the Med Evac crew moved Plaintiff Dustin Keltie from the EMS cot onto the helicopter stretcher for transport.

66.     The Med Evac helicopter departed the scene of the collision at 9:11 p.m.

67.     During the helicopter trip to North Colorado, Plaintiff Dustin Keltie's condition dramatically deteriorated.  The automatic blood pressure cuff was unable to detect a blood pressure and no mean blood pressure measurements were recorded from 9:03 p.m. through 9:34 p.m.

68.     At 9:13 p.m., the Glasgow coma assessment was repeated and showed marked deterioration to a Glasgow score of 3, indicating that Plaintiff Dustin Keltie was comatose and totally unresponsive.

69.     At 9:25 p.m., the Med Evac crew initiated a Trauma Alert Report to North Colorado "requesting full trauma team activation and hot offload."  The hospital was notified that the helicopter's Estimated Time of Arrival was in 15 minutes.

70.     During the helicopter transport to North Colorado, Plaintiff Dustin Keltie was given medication for sedation and induction prior to intubation as well as medication for pain and sedation, and sodium bicarbonate to deal with his blood loss and hypotension.

71.     The North Colorado Med Evac helicopter arrived at North Colorado Medical Center in Greeley at 9:34 p.m.  At 9:36 p.m., Plaintiff Dustin Keltie was moved from the helicopter onto a transport stretcher.

72.     Following a "hot offload" from the helicopter, Plaintiff Dustin Keltie arrived at the North Colorado Medical Center Emergency Room at approximately 9:40 p.m.

73.     At 9:41 p.m., a third Glasgow coma assessment was performed and showed no improvement from the assessment 28 minutes earlier, with a Glasgow score of 3 indicating that Plaintiff Dustin Keltie remained comatose and totally unresponsive.  Plaintiff Dustin Keltie was then transferred from the transport stretcher onto a bed in the Emergency Room at North Colorado.

74.     Plaintiff Dustin Keltie was unresponsive during the helicopter transport from 9:03 p.m. through his transfer of care at the North Colorado Medical Center Emergency Room at 9:41 p.m.

75.     While hospitalized at North Colorado, Plaintiff Dustin Keltie underwent the following medical procedures:

      a.     8/4/14 – Femur ORIF (right leg)

      b.     8/4/14 – Groin exploration (left)

      c.     8/4/14 – Irrigation and debridement hand (Right, third finger)

      d.     8/4/14 – Irrigation and debridement knee (lateral left)

      e.     8/4/14 – Irrigation and debridement scrotum (left)

      f.     8/4/14 – Open reduction external fixation lower E (Right tibial)

      g.     8/4/14 – Closed reduction (left wrist)

h.  8/4/14 – Femur intramedullary rod insertion (left)

i.  8/6/14 – Pelvis ORIF

j.  8/6/14 – Radius ORIF

k.  8/6/14 – Tibia intramedullary rod insertion (right)

l.  8/6/14 - Ulna ORIF (right)

m.  8/6/14 – Wound closure lower extremity (groin left)

n.  8/13/14 – Pelvis ORIF

o.  8/21/14 – Autograft

p.  8/21/14 – Burn debridement

q.  8/25/14 – Wound vac placement

r.  8/25/14 - Burn debridement

76.    In addition, Plaintiff Dustin Keltie sustained multiple burns and a degloving injury to his scrotum. In particular, he suffered a burn wound on his right heal that required wound vac treatment for several months.

77.    Plaintiff Dustin Keltie remained at North Colorado until September 5, 2014, when he was transferred to the Northern Colorado Long Term Acute Hospital. There, he received treatment for his extensive orthopedic injuries, as well as burn and nerve injuries, particularly to his lower right extremity.

78.    Plaintiff Dustin Keltie remained at the Northern Colorado Long Term Acute Hospital until October 20, 2014. Soon after discharge, he began receiving physical and occupational therapy two to three times per week. He continued to receive extensive treatment for his lower extremity burns and nerve injuries.

79.    Beginning in December of 2014, Plaintiff Dustin Keltie's orthopedic surgeon became concerned with his right lower extremity weakness and dysesthesia. It was noted that he had mild (if any) sensation in his right foot, he could not move it, and that it was "total[ly] floppy."

80.    In April, 2015, Plaintiff Dustin Keltie had an electrodiagnostic study on his right lower extremity. The report concluded that Plaintiff Dustin Keltie had "Complete denervation right

lower extremity below knee, with inability to evoke response in sural sensory, tibial motor, or fibular motor nerves, including the common fibular nerve recording from the anterior tibialis." Because the "anterior tibialis also had some electrically active tissue in the surface region, but was electrically silent in deeper portions of muscle" Plaintiff Dustin Keltie's doctors believed that there was a "significant loss of muscle tissue, probably due to ischemia with necrosis of muscle (this suggests there was compartment syndrome present in this patient)."

81.     At this time, given his severe injuries, Plaintiff Dustin Keltie's doctors are strongly considering whether he would benefit from an amputation.

82.     As a result of the negligence of the Defendants, Plaintiff Dustin Keltie has suffered permanent physical impairment, physical and emotional pain and suffering; inconvenience, loss of enjoyment of life; past and future medical, hospital and therapy expenses; and loss of earnings and earning capacity.  Certain of these injuries are permanent and will be permanently painful, disabling and incapacitating.  He will suffer future medical expenses and lost income and other expenses including a loss of home services as a result of these permanent injuries.

83.     To date, Plaintiff Dustin Keltie's medical and hospital expenses exceed $1,700,000.

84.     To date, Plaintiff Dustin Keltie's lost earnings exceed $40,000.

85.     After Plaintiff Dustin Keltie was transported to North Colorado by helicopter, Trooper Aydt approached Defendant Bridges and instructed him to gather his personal belongings so he could go get his mandatory drug test.  While Defendant Bridges was collecting his belongings, Trooper Aydt advised him "that he could not take any papers that had to do with this truck such as log books, weight slip, registration, and annual inspections."

86.     Trooper Aydt also issued a Case Report with a Hold Order on the Defendants' vehicle on August 4, 2014.

87.     After Trooper Aydt gave Bridges this clear admonition, an insurance adjuster with Frontier Adjusters named Selby Batty drove Defendant Bridges from the collision scene to get his post-collision drug test.

88.     Following the collision, the vehicles involved were towed to Lebsock Repair for storage.

89.     On August 11, 2014, at approximately 1:00 p.m., Trooper Kinder arrived at Lebsock Repair to conduct a thorough examination of both vehicles.  Trooper Kinder notified the owner of Lebsock Repair – Barry Lebsock – that he was there to complete the inspection.  At that point, Barry Lebsock handed Trooper Kinder a packet that contained critical information that had been removed by Bridges from his vehicle in direct violation of specific instructions given to him by investigating officers with the Colorado State Patrol.

90.     One of the documents in the packet handed to Trooper Kinder was Defendant Bridges critical log book entries for the date of the collision – August 4, 2014.

91.     Barry Lebsock informed Trooper Kinder that Defendant Bridges "brought him this information on Thursday after the crash around 1600 hrs."

92.     When Trooper Kinder looked at the page from Defendant Bridges' log book, he concluded that Bridges "would have exceeded the 14 hour rule on that one page."

93.     Trooper Kinder asked Barry Lebsock "how [Bridges' logbook] has gotten out of the truck."

94.     Trooper Kinder later found the previous day's logs in a metal case in the tractor Defendant Bridges was driving.

95.     Based on his examination of Defendant Bridges' log book entries, Trooper Kinder issued Defendant Bridges citations for driving beyond the 11-hour driving limit in a 14-hour period, in violation of Sec. 395.3(a)(3); and for driving beyond the 14-hour duty period by driving after the 17th hour, in violation of Sec. 395.3(a)(2).

96.     A sudden, unanticipated emergency was not a factor in causing or contributing to the cause of the collision.

97.     Unknown or unanticipated weather conditions were not a factor in causing or contributing to the collision.

98.     The comparative negligence of Plaintiff Dustin Keltie was not a factor in causing or contributing to the cause of the collision.

99.     The negligence of a third party over whom Defendants had no control was not a factor in causing or contributing to the cause of the collision.

100.    Plaintiff Dustin Keltie has not failed to mitigate any of the damages which he incurred as a result of the collision.

101.    Defendants are not entitled to any of the protections afforded by C.R.S. §13-21-111.6 (Collateral Source) in connection with the collision.

102.    Defendants are not entitled to any of the protections afforded by C.R.S. §13-21-111.7 (Assumption of Risk) in connection with the collision.

## FIRST CLAIM FOR RELIEF
### Negligence (Defendant Bridges)

103.    Plaintiff incorporates by reference each and every allegation of his Complaint as if fully set forth herein.

104.    Defendant Bridges was negligent in the operation of his commercial motor vehicle on August 4, 2014 at 4:30 p.m. on County Road 19 south of Fort Morgan.  Defendant Bridges negligence included, but was not limited to:

    a.      Failure to drive as a reasonably prudent professional truck driver would have done under same or similar circumstances;

    b.      Failure to maintain a proper lookout;

    c.      Failure to yield to oncoming traffic;

    d.      Careless driving;

    e.      Failing to use reasonable care in the operation of the tractor/trailer.

105.     As a result of Defendant Bridges' negligence, Plaintiff Dustin Keltie has sustained injuries, losses, and damages more fully described above.

**SECOND CLAIM FOR RELIEF**
**Negligence *Per Se* (Defendant Bridges)**

106.     Plaintiff incorporates by reference each and every allegation of his Complaint as if fully set forth herein.

107.     Defendant Bridges was in violation of one or more provisions of Colorado law, including, but not limited to, C.R.S. § 42-4-1402.

108.     C.R.S. § 42-4-1402 states:

42-4-1402. Careless driving – penalty.

> (1)  A person who drives a motor vehicle, bicycle, electrical assisted vehicle, or low-power scooter in a careless and imprudent manner, without due regard for the width, grade, curves, corners, traffic, and use of the streets and highways and all other intended circumstances, is guilty of careless driving.  A person convicted of careless driving of a bicycle or electrical assisted bicycle shall not be subject to the revisions of section 42-2-127.
> (2) (a) Except as otherwise provided in paragraphs (b) and (c) of this subsection (2) any person who violates any provision of this section commits a class two misdemeanor traffic defense.
> (b) If the person's actions are the proximate cause of bodily injury to another, such a person commits a class 1 misdemeanor traffic offense.
> (c) If the person's actions are the proximate cause of death to another, such person commits a class one misdemeanor offense.

109.     At the time of the collision, C.R.S. § 42-4-1402 was in effect.

110.     Defendant Bridges violated C.R.S. § 42-4-1402.

111.     The purpose of this and other similar provisions is to prevent against the types of injuries, damages, and losses Plaintiff Dustin Keltie sustained in the collision.

112.     Defendant Bridges' violation of this provision constitutes negligence *per se*.

14

113. Defendant Bridges' violation of the statute set forth above caused Plaintiff Dustin Keltie to suffer injuries, damages, and losses more fully described above.

### THIRD CLAIM FOR RELIEF
**Negligent Entrustment (Defendants Taylor & Hall and Freight Logistics)**

114. Plaintiff incorporates by reference each and every allegation of his Complaint as if fully set forth herein.

115. As the owners and/or operators of the tractor trailer, Defendants Taylor & Hall and/or Freight Logistics had the ability and authority to control the use and operation of the tractor and trailer by Defendant Bridges.

116. Defendants Taylor & Hall and/or Freight Logistics knew or had reason to know that Defendant Bridges was likely to use and operate the tractor trailer in a negligent and careless manner and under circumstances which would subject third parties, such as Plaintiff Dustin Keltie, to an unreasonable risk of harm.

117. As a result of the negligence of Defendants Taylor & Hall and Freight Logistics as described above, Plaintiff Dustin Keltie has suffered injuries, damages, and losses more fully described above.

### FOURTH CLAIM FOR RELIEF
**Vicarious Liability (Defendants Taylor & Hall and Freight Logistics)**

118. Plaintiff incorporates by reference each and every allegation of his Complaint as if fully set forth herein.

119. At all times pertinent herein, Defendant Bridges was using and operating the tractor trailer for the benefit of, under the supervision of and in connection with the businesses of Defendants Taylor & Hall and/or Freight Logistics.

120.    At all times pertinent, Defendant Bridges was using and operating the tractor trailer as an agent or employee of Defendants Taylor & Hall and/or Freight Logistics.

121.    Pursuant to Motor Carrier Safety Regulations as adopted by the State of Colorado, Defendants Taylor & Hall and/or Freight Logistics are legally responsible for the acts and omissions of Defendant Bridges in connection with the collision.

122.    As a result of their legal relationship and responsibilities for the acts and omissions of Defendant Bridges, Defendants Taylor & Hall and/or Freight Logistics are responsible, jointly and severally, for the injuries, damages and losses suffered by the Plaintiff Dustin Keltie as a result of the conduct of Defendant Bridges more fully described above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dustin A. Keltie respectfully requests that the Court enter judgment in his favor and against Defendants Taylor & Hall Transport, LLC, Freight Logistics & Transportation, Inc., and John S. Bridges, and award him the following relief:

a.    For compensatory economic and non-economic damages in amounts which will fully compensate Plaintiff Dustin Keltie for all his damages, general and special without limitation, pain, suffering, loss of enjoyment of life, physical impairment, lost wages, past and future, loss of earning capacity, post and future medical expenses and life care expenses to be proved at trial;

b.    Prejudgment interest beginning from date of incident and post judgment interest.

c.    For reasonable attorneys' fees and costs of suit herein; and

d.    For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial to a jury on all issues so triable.

Dated this 19th day of October 2015.

Respectfully submitted,

s/ Jeremy A. Sitcoff
Bradley A. Levin
Jeremy A. Sitcoff
**LEVIN ROSENBERG PC**
1512 Larimer Street, Suite 650
Denver, Colorado 80202
(303) 575-9390
(303) 575-9385
bal@levinrosenberg.com
jas@levinrosenberg.com

Molly Greenblatt Welch
Bruce Braley
**LEVENTHAL & PUGA, P.C.**
950 S Cherry St., Suite 600
Denver CO 80246
 (303) 759-9945
(303) 759-9692
MGreenblatt@leventhal-law.com
bbraley@leventhal-law.com

**ATTORNEYS FOR PLAINTIFF**

Plaintiffs' Address
218 Grape Street, SPC 6
Hudson, Colorado 80642